**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**

**HARVEY P. SHORT,**

       **Plaintiff,**

**v.**                                     **Case No. 2:07-cv-00968**

**VICKIE GREENE, Jail Administrator,
LIEUTENANT HARVEY,
SERGEANT CARTER,
OFFICER FRYE,
OFFICER COOK,
CORPORAL KILLEN, II,
OFFICER FERRELL,
CORPORAL BROWSER,
OFFICER HUGHES (the small Hughes),
JOHN DOE I,
JOHN DOE II, and
NURSE CATHY BOOTH,**

       **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATION**

    This is a civil rights case in which Plaintiff alleges that he was subject to the use of excessive force and to deliberate indifference to his serious medical needs at the Southwestern Regional Jail ("SWRJ").  By Standing Order, this civil action was referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendation for disposition. Pending before the court is Defendant Cathy Booth's Motion to Dismiss the Second Amended Complaint for Failure to State a Claim Upon Which Relief May Be Granted or in the alternative Motion for Summary Judgment and Memorandum of Law in Support Thereof (docket

sheet document # 76).

**<u>PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY</u>**

In December of 2007, when the alleged incident occurred, Plaintiff was incarcerated as a state pre-trial detainee at the SWRJ. Plaintiff's Complaint (# 2), filed pursuant to 42 U.S.C. § 1983, on December 31, 2007, contains two claims: (1) that staff used excessive force in a discriminatory manner against Plaintiff; and (2) that medical and correctional staff at the SWRJ denied him appropriate medical care. Plaintiff filed an Amended Complaint on January 10, 2008 (# 7), which corrected the date of the events from November 6 to December 6, 2007.

On June 4, 2009, Plaintiff was granted leave to file a Second Amended Complaint. The Second Amended Complaint is docketed as document # 72. On June 12, 2009, defendant Cathy Booth, by counsel, filed the instant motion (# 76). The remaining defendants filed an Answer to the Second Amended Complaint (# 77). Accordingly, a separate Time Frame Order concerning discovery and dispositive motions applicable to the remaining defendants has been entered.

The paragraphs of Plaintiff's Second Amended Complaint relating to defendant Booth state as follows:

13) As a result of paragraphs # 11 and # 12 [which describe the alleged use of excessive force against Plaintiff by various correctional officers named as defendants herein], the Plaintiff sustained cuts into his flesh and legs and ankle injuries, and he had swollen hands;

2

* * *

16)   While in the bull-pen area in H-6 cell, Corporal Killen, II, Officer Frye, Officer Hughes, Officer Ferrell, Officer Farmer, Officer P.C. Cook, and Sgt. Carter kicked, stomped, beat and battered the Plaintiff.  Officer Frye continued twisting the Plaintiff's wrist trying to break them during the entire incident;

17)   Nurse Cathy Booth witnessed the attack in the bull-pen area in the H-6 cell and refused the Plaintiff medical treatment after the beating despite the cuts, swollen hands, injured and cut ankles and wrists, and eye damage on the Plaintiff due to the chemical agent;

18)   The Plaintiff did not receive medical treatment until December 18, 2007 after filing grievances;

* * *

29)   Nurse Cathy Booth of PrimeCare Medical of WV was deliberately indifferent to the Plaintiff's serious medical needs after the attack and refused to treat the Plaintiff for his injuries sustained during the attack;

30)   On December 6, 2007, Nurse Cathy Booth was called into the booking area to H-6 cell where the Plaintiff was being beatened [sic; beaten] by Officer Frye, Corporal Killen, Officer P.C. Cook and others;

31)   Nurse Booth witnessed the Plaintiff being attacked by jail officers in the H-6 cell in the booking area;

32)   Nurse Booth was called into the H-6 cell to provide medical treatment, but she did not provide any medical treatment;

33)   Nurse Booth failed to request that the beating stop;

34)   Nurse Booth failed to intervene and stop the physical beating that she witnessed;

3

35)   Nurse Booth was a state actor on December 6, 2007, and she failed to truthfully report what she witnessed on December 6, 2007, to protect jail officers from civil liability;

36)   Nurse Booth had a duty to request that the beating stop, a duty to intervene, a duty to protect the Plaintiff's health once she agreed to provide medical treatment, and a duty to truthfully report the physical attack committed against the Plaintiff but she did nothing and allowed the physical attack to continue.

(# 72 at 7-11; # 76, Ex. C at 7-11).

As noted above, on June 12, 2009, Defendant Booth (hereinafter "Nurse Booth") filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment (# 76).  In that motion, Nurse Booth argues that Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted against her.  Specifically, she asserts that the Second Amended Complaint fails to state a claim of deliberate indifference to a serious medical need and further fails to state a claim for failure to intervene.

## STANDARD OF REVIEW

Although Nurse Booth has filed an alternative Motion to Dismiss or Motion for Summary Judgment, the law is clear that where the court will rely upon materials outside of the pleadings, the court should treat the motion as one for summary judgment.  In evaluating summary judgment motions, Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to
judgment as a matter of law.

Fed. R. Civ. P. 56(c) (2007).  Material facts are those necessary

to establish the elements of a party's cause of action.  <u>Anderson</u>

<u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the

record and all reasonable inferences drawn therefrom in a light

most favorable to the non-moving party, a reasonable fact-finder

could return a verdict for the non-movant.  <u>Id.</u>  The moving party

has the burden of establishing that there is an absence of evidence

to support the nonmoving party's case.  <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 325 (1986).  Even if there is no dispute as to the

evidentiary facts, summary judgment is also not appropriate where

the ultimate factual conclusions to be drawn are in dispute.

<u>Overstreet v. Kentucky Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th

Cir. 1991).

If the moving party meets this burden, then the non-movant

must set forth specific facts as would be admissible in evidence

that demonstrate the existence of a genuine issue of fact for

trial.  Fed. R. Civ. P. 56(c); <u>Id.</u> at 322-23.

> [The] adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleading,
> but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific
> facts showing that there is a genuine issue for trial.
> If the adverse party does not so respond, summary
> judgment, if appropriate, shall be entered against the
> adverse party.

Fed. R. Civ. P. 56(e).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## ANALYSIS

Nurse Booth's affidavit states that she was called to a holding cell where Plaintiff was located to evaluate him. Specifically, Nurse Booth states:

> 5.    On the afternoon of December 6, 2007, while I was walking from the medical department to the booking department, I encountered several correctional officers carrying Harvey Short to the booking department.
>
> 6.    I was requested by one of the correctional officers at the jail to follow the officers to the booking department and to examine inmate Harvey Short because Mr. Short had been in an altercation with correctional officers and had been sprayed with "OC spray" (oloeresin capsicum, also known as pepper spray).

(# 76, Ex. E).

Nurse Booth further states that she asked Plaintiff if he was injured and he reported that he thought his wrists were broken. Nurse Booth evaluated Plaintiff and determined that, although his wrists were red, he had normal range of motion in both of his wrists, and that there was no swelling noted. (Id., ¶ 8). The only notable injury was that Plaintiff's eyes were red and watery from the pepper spray that had been used on him. (Id., ¶ 9). Nurse Booth requested that the officers take Plaintiff to an area where he could wash the pepper spray from his face and eyes; which they did. Nurse Booth did not believe that Plaintiff needed any medical treatment. Thus, she cleared Plaintiff to remain in the booking area because he did not suffer any serious or significant injury. (Id., ¶¶ 10-15).

Plaintiff's Memorandum of Law in Response to Nurse Booth's motion maintains that he was attacked in the H-6 pen area in Nurse Booth's presence. (# 79 at 2). Plaintiff further contends that Corporal Killen then told Nurse Booth to leave, and that the officers continued to beat him, even while he was in the shower. (Id. at 3). Only after this, according to Plaintiff, did Nurse Booth come back in to evaluate him. Plaintiff states that Nurse Booth provided no treatment for his "cuts, bruises, and injuries to his personal being" and that "nothing was received for pain or the open wounds." (Id.)

## Deliberate Indifference to Serious Medical Needs

Conditions of confinement, including medical treatment, of state pre-trial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979); Hill v. Nicodemus, 979 F.2d 987, 990 (4th Cir. 1992). However, the analysis of such claims under the Fourteenth Amendment shares much in common with the Eighth Amendment approach. As noted by the United States Court of Appeals for the Fourth Circuit in Riley v. Dorton, 115 F.3d 1159, 1166 (4th Cir. 1997), "we need not resolve whether [the plaintiff] was a pretrial detainee or a convicted prisoner because the standard in either case is the same, that is, whether a government official has been 'deliberately indifferent to any [of his] serious medical needs.'" Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001). (# 14 at 9).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see also Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity

for a doctor's attention.  Gaudreault v. Munic. of Salem, Mass.,
923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by
> either actual intent or reckless disregard.  See Benson
> v. Cady, 761 F.2d 335, 339 (7th Cir. 1985).  A defendant
> acts recklessly by disregarding a substantial risk of
> danger that is either known to the defendant or which
> would be apparent to a reasonable person in the
> defendant's position.  See id.  Nevertheless, mere
> negligence or malpractice does not violate the Eighth
> Amendment.  See Estelle, 429 U.S. at 106.

Miltier, 896 F.2d at 851-852.  Furthermore, a disagreement as to
the proper medical care is not sufficient to establish deliberate
indifference to a serious medical need,  Wright v. Collins, 766
F.2d 841 (4th Cir. 1985), and "[q]uestions of medical judgment are
not subject to judicial review."  Russell v. Sheffer, 528 F.2d 318
(4th Cir. 1975).

Nurse Booth asserts that Plaintiff's Second Amended Complaint
does not "make allegations that meet the requisite test that the
deprivation was objectively, sufficiently serious or that Ms. Booth
had a culpable state of mind, knowing the plaintiff faced a
substantial risk and failed to take appropriate measures."  (# 76
at 5).  Nurse Booth further states:

> The plaintiff has clearly not alleged a sufficiently
> serious deprivation of his right to medical care.
> Rather, the plaintiff has only questioned the result of
> his evaluation by Ms. Booth.  Additionally, the
> allegations in the Second Amended Complaint make it clear
> that the plaintiff only claims cuts on ankles, legs and
> wrists with swollen hands and reddened eyes.  See:
> Exhibit C at Paragraph 13.  These exact types of alleged
> injuries have been determined insufficient to sustain a
> claim for deliberate indifference to medical needs.  The

> plaintiff has not alleged any exceptional circumstances.
> As a result, the plaintiff has failed to state a claim
> that relief may be granted upon and the claim should be
> dismissed as a matter of law.

(Id. at 7).

Nurse Booth further asserts that Plaintiff has failed to plead

any allegations pertaining to her state of mind.  She adds:

> Ms. Booth was acting reasonably when she reported to an
> area  where  an  inmate  needed  a  medical  evaluation,
> evaluated the inmate, and made a determination, based
> upon her education and experience, whether the inmate
> needed  medical  attention,  As  such,  the  plaintiff's
> allegations in the Amended Complaint and his Affidavit
> simply   cannot   establish   a   claim   for   deliberate
> indifference to medical needs because there has been no
> allegation that Ms. Booth had a culpable state of mind.

(Id. at 8).

Plaintiff maintains that there is a genuine issue of material

fact concerning Nurse Booth's conduct and that summary judgment

should be denied.  Plaintiff further states:

> The  Plaintiff  showed  Defendant  Booth  all  his  cuts,
> bruises and injuries.  He said that he was in pain.
> Despite the knowledge personally of the physical attacks
> witnessed by her and the crystal clear cuts, bruises and
> painful conditions, she walked away and did not provide
> any medical treatment.  As a result of Defendant Booth's
> acts or omissions, she was "deliberately indifference[
> sic; indifferent]" to the Plaintiff's "serious medical
> needs."

(# 79 at 9).  Plaintiff further asserts that there was a plexiglass

door between him and Nurse Booth, so there was no true evaluation

of his condition.  (Id.)

Nurse Booth's reply brief contends that:

10

The plaintiff's response cites absolutely no applicable
legal authority to support his position that he has made
allegations sufficient to sustain a claim for deliberate
indifference to his medical needs.  Rather, the plaintiff
simply states Nurse Booth was indifferent to his medical
needs because she "knew plaintiff was subjected to
another beating" and "she came over to the Plaintiff's
cell and inquired as to whether he was okay."   See:
Plaintiff's Memorandum of Law at Page 9.   These
allegations do not meet the legal standard for a claim of
deliberate indifference to medical needs.  As stated in
previous legal memoranda, in order to prove such a claim
the plaintiff must prove that "the deprivation alleged
must be objectively "sufficiently serious" and that the
prison official had a "sufficiently culpable state of
mind," knowing that the inmate faced a substantial risk
and then disregarding the risk by failing to take
appropriate measures.  Farmer v. Brennan, 511 U.S. 825
(1994), *citing* Wilson v. Seiter, 501 U.S. 294 (1991).
Mere allegations of inadvertent medical care or a
negligent diagnosis are insufficient. Id. Additionally,
a disagreement as to the type of medical care is
insufficient.

(# 80 at 1).

Nurse Booth's reply further contends that Plaintiff has not
demonstrated that he suffered serious injury from the altercation
and, therefore, he cannot satisfy the first element of the
deliberate indifferent standard.   She states:

In evaluating the serious medical need requirement, the
4th Circuit upheld a dismissal when officers failed to
provide medical care when a pre-trial detainee had a
laceration above his eye, a puncture that contained a
1/4" piece of glass in his hand and multiple scrapes and
bruises.  Martin v. Gentile, et al., 849 F2d 863 (4th
Cir. 1988).   Additionally, the 5th Circuit upheld the
dismissal of a Complaint when a plaintiff alleged
deliberate indifference to medical needs because
handcuffs were applied so tightly that the wrists were
swollen and bled.  Wesson v. Oglesby, 910 F.2d 278 (5th
Cir. 1990).   These are the exact injuries that Plaintiff
claims.   Plaintiff has produced no authority whatsoever
to indicate that the injuries were serious.  As such, the

>     plaintiff's Complaint simply fails to state a claim
>     because it cannot even meet the first element required
>     for deliberate indifference to medical needs.

(Id. at 3).   Finally, Nurse Booth's reply again asserts that

Plaintiff cannot meet the subjective element of deliberate

indifference.   She states:

>     The plaintiff's brief succinctly alleges that Ms. Booth
>     walked over to his cell and inquired as to whether he was
>     okay.   Additionally, Mr. Short has admitted that he
>     showed all of his injuries to Ms. Booth.   Ms. Booth's
>     Affidavit confirms that she evaluated the plaintiff and
>     that the evaluation did not reveal any "serious or
>     significant injury" and that she opined that the
>     plaintiff did not exhibit swelling of the wrists, that
>     the wrists had a normal range of motion, that the eyes
>     were slightly reddened and that she understood the
>     officers would take the plaintiff to the shower to wash
>     the "OC spray" from his face and eyes.   These actions
>     simply do not show any culpable state of mind and reveal
>     that the defendant was acting reasonably when she
>     reported to an area where an inmate needed a medical
>     evaluation, that she did in fact evaluate the plaintiff
>     and made a determination based upon her education and
>     experience that medical attention, beyond a shower to
>     wash off the OC spray, was not necessary.   As such, the
>     plaintiff simply has not established a claim for
>     deliberate indifference to medical needs because there
>     has been no allegation whatsoever of Ms. Booth's culpable
>     state of mind and must be dismissed for failure to state
>     a claim upon which relief may be granted.

(Id. at 4).

     As noted by Nurse Booth, disagreements between a health care

provider and the inmate over a diagnosis and the proper course of

treatment are not sufficient to support a deliberate indifference

claim, and questions of medical judgment are not subject to

judicial review.   Wright v. Collins, 766 F.2d 841, 849 (4th Cir.

1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975).   As

noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate.  Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).  Plaintiff's wrists were obviously not broken, and he has not demonstrated that any of his complaints constituted a serious medical need.  Nor has he demonstrated that Nurse Booth exhibited deliberate indifference to his medical needs.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to establish that Nurse Booth was deliberately indifferent to his serious medical needs and, thus, Plaintiff has failed to demonstrate a violation of his Fourteenth Amendment rights.

### Failure to Intervene

Prison officials must also take reasonable steps to protect prisoners, including pre-trial detainees, from physical harm by others.  Winfield v. Bass, 106 F.3d 525 (4th Cir. 1997); Pressly v. Hutto, 816 F.2d 977 (4th Cir. 1987).  Plaintiff has asserted that this responsibility extended to Nurse Booth, and that she had a duty to intervene in an altercation between Plaintiff and correctional officers.

However, as noted by Nurse Booth in her motion, Plaintiff must demonstrate more than mere negligence and must show that the failure to intervene was deliberate.  Nurse Booth further asserts

13

that the duty to intervene has not been extended to nurses or other

health care providers.   (# 76 at 4-5).

Plaintiff's Memorandum of Law in Opposition contends:

Due to the fact that Nurse Cathy Booth agreed to
assist and work with correctional officers who were using
excessive force on the Plaintiff while the Plaintiff was
handcuffed behind his back and in leg shackles, she acted
jointly with state agents or actors.  Defendant Booth
agreed to assist or work with the officers who were using
in her presence unnecessary use of force.  Her duty as a
nurse was to ensure that the Plaintiff's health needs
were met.   If she was present to ensure that the
restraints was applied properly, then that was a health
need.   However, she never checked the restraints –
Corporal Killen who applied them tightly to stop blood
circulation did.   Nurse Booth witnessed the physical
attacks on the Plaintiff by her co-worker officers.  She
even left the H-6 cell and returned with them a second
time.   Corporal Killen even told Nurse Booth to leave,
because they did not want her to see the rest of what
they were going to do to the Plaintiff.   She simply
acquiesed [sic; acquiesced] or condoned the unnecessary
force.  How can a nurse watch an inmate in handcuffs and
leg shackles with pepper mace in his eyes and burning his
skin [and] not object to the unnecessary force?  How can
she be about health needs and condone a brutal attack
that destroys health?

* * *

Counsel for Defendant Booth argues that no precedent
exists in the 4th Circuit holding Defendant Booth liable
for  "failure  to  intervene."    He  argues  because
Defendant's employment is a "nurse" that she had no duty.
This argument is like the buggy pulling the horse.  Nurse
Booth was a state actor, West v. Atkins, supra.  As or in
her  role  as  nurse,  she  agreed  to  assist  officers  in
violating the Plaintiff's Constitutional Rights when the
officers [] openly and repeatedly attacked the Plaintiff
in her presence.  She had a duty to check the restraints
as well as request that the attacks stop, intervene or
refuse to assist the officers.   It does not matter if
Cathy Booth was a private citizen unemployed.  Once she
agreed to assist or work with state actors, she became
one.   Counsel's argument is therefore without merit.

14

(# 79 at 6-8).

Nurse Booth's reply asserts that Plaintiff has cited no legal authority supporting a finding that a health care provider has a duty to intervene if unnecessary force is being used by a law enforcement or correctional officer.  Nurse Booth adds:

> Cathy Booth was a nurse employed by an independent agency.  Cathy Booth was not employed by the Department of Corrections and had no law enforcement training whatsoever or knowledge on how to intervene in an altercation.  Cathy Booth's job was not to serve and protect.  Rather, her job was to evaluate the plaintiff and take care of an individual's medical requirements. Simply stated, there does not exist any judicial precedent, case law or statutes within this jurisdiction that support a claim that a nurse has a duty to intervene in a correctional environment.

(# 80 at 1).  Nurse Booth further asserts that, even if the court were to find that such a duty exists, Plaintiff cannot demonstrate that Nurse Booth acted with deliberate indifference.  (Id.)

Based upon the undersigned's review, the Fourth Circuit has never extended the duty to intervene in an altercation between a prisoner and law enforcement or correctional officers or other inmates to those who are not law enforcement or correctional officers.  The undersigned proposes that the presiding District Judge **FIND** that Nurse Booth had no duty to intervene in the alleged altercation between Plaintiff and the defendant correctional officers, or to maintain the order of the correctional facility.

### Qualified Immunity

State actors are not liable for monetary damages if they can show that their conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known.  See Wilson v. Layne, 526 U.S. 603, 609 (1999). Qualified immunity exists to protect public officials in the performance of their duties unless they are "plainly incompetent" or they "knowingly violate the law."  Doe v. Broderick, 225 F.3d 440, 446 (4th Cir. 2000).  Nurse Booth was in the position of a state actor, due to the contract between her employer, PrimeCare of West Virginia, Inc., and the State of West Virginia.  See West v. Atkins, 487 U.S. 42, 198 S. Ct. 2250, 101 L. Ed.2d 40 (1988)(health care provider who was under contract with state to provide medical services to inmates acted under color of state law, within meaning of § 1983, when he treated inmate).

In ruling on an issue of qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the allegations do not give rise to a constitutional violation, no further inquiry is necessary.  Id.  If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case.  Id.  Where

16

legitimate questions exist as to the contours of a constitutional right or whether certain conduct violates constitutional rights, qualified immunity applies.  See Martinez v. Colon, 54 F.3d 980, 989 (1st Cir. 1995).

The undersigned has found only one case in which a court applied the duty to intervene to prevent the use of excessive force to a nurse.  See Durham v. Nu'Man, 97 F.3d 862 (6th Cir. 1996), which involved an alleged beating of a patient at a state hospital by hospital security guards, which was witnessed by a nurse and another security officer.  Therefore, even if a duty to intervene exists, there was no clearly established precedent that would have put Nurse Booth on notice that she was violating Plaintiff's constitutional rights.  Thus, Nurse Booth is entitled to qualified immunity on Plaintiff's failure to intervene claim.  Likewise, because Plaintiff has not demonstrated a violation of his Fourteenth Amendment rights concerning his medical treatment, Nurse Booth is also entitled to qualified immunity on that claim.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that defendant Cathy Booth is entitled to judgment as a matter of law on Plaintiff's deliberate indifference and failure to intervene claims.

<u>**RECOMMENDATION**</u>

It is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendant Cathy Booth's Motion for Summary Judgment (#

76-2), **DENY AS MOOT** Defendant Cathy Booth's Motion to Dismiss (#
76-1), and dismiss Cathy Booth as a defendant in this matter, with
prejudice.  This matter should remain referred to the undersigned
for additional proceedings with regard to the remaining defendants.

The parties are notified that this "Proposed Findings and
Recommendation" is hereby **FILED**, and a copy will be submitted to
the Honorable John T. Copenhaver, Jr., United States District
Judge.  Pursuant to the provisions of Title 28, United States Code,
Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of
Civil Procedure, Plaintiff shall have ten days (filing of
objections) and three days (service/mailing) from the date of
filing this "Proposed Findings and Recommendation" within which to
file with the Clerk of this Court, specific written objections,
identifying the portions of the "Proposed Findings and
Recommendation" to which objection is made, and the basis of such
objection.  Extension of this time period may be granted by the
presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall
constitute a waiver of <u>de</u> <u>novo</u> review by the District Court and a
waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder</u>
<u>v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S.
140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United</u>
<u>States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).  Copies of such
objections shall be provided to Judge Copenhaver and the opposing

parties.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff and counsel of record.

<table>
<tr><td>October 5, 2009</td><td>Mary E. Stanley</td></tr>
<tr><td>Date</td><td>Mary E. Stanley<br>United States Magistrate Judge</td></tr>
</table>

19